FILED

98 JUN 23 AM 9:25

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

JUN 24 1998

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

HAROLD McNEFF, )
 )
    Plaintiff, )
 )
vs. ) CIVIL ACTION NUMBER
 )
GUARDIAN LIFE INSURANCE ) 97-C-0417-S
COMPANY OF AMERICA, )
 )
    Defendant. )

**MEMORANDUM OF OPINION DENYING MOTION TO RECONSIDER**

    The plaintiff Harold McNeff has requested reconsideration of the court's order granting the defendants Guardian Life Insurance Company of America ("Guardian")'s motion to strike the state law claims of breach of contract, bad faith, and wantonness. The court granted the motion based on the preemption of state law claims by § 1144(a) of the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA"). The court now concludes that although the plaintiff is not an "employee," within the meaning of ERISA, 29 U.S.C. § 1002(6), he is nonetheless a "beneficiary" of an employee benefit plan, within the meaning of 29 U.S.C. § 1002(8). Accordingly, the Motion to Reconsider will be denied.

I

    The contract under which this dispute arises was issued by Guardian to Property Damage Appraisers ("PDA") of Fort Worth, Texas, a corporation whose business consists of doing what its name



implies. In the 1991 PDA Specifications for A Plan of Group Insurance, i.e., application, submitted to Guardian, PDA suggested the following classifications:

| Classification | LTD | LTD |
|---|---|---|
| I Officers, Executive Director | 70% to 7,000 | 60 day E.P. |
| II All Other Home Office Employees | 60% to 3,500 | 60 day E.P. |
| III State Representatives (Franchises) | 60% to 1,500 | 90 day E.P. |

The application contains a longhand "Class III earnings definition: net income as a result of the exclusive franchise agreement with PDA. Net income shall mean receipts from paid appraisals less all relative business expenses." *Id.*, p. 1. Premiums for the policy were to be paid by PDA on a non-contributory basis.

In 1990, Harold McNeff entered into a Franchise Agreement ("the Agreement") with PDA. Among other things, the Franchise Agreement provides:

> It is expressly agreed and understood between the parties hereto that **Franchisee is not an agent of Franchisor**. Franchisee has no power, right, duty, or authority to bind and obligate Franchisor in any manner. **Franchisee is in all things an independent contractor and shall conduct his operation as an independent contractor.**

*Id.*, p. 3, ¶ 8 (emphasis supplied).

2

McNeff and PDA executed a new Franchise Agreement on March 17, 1993. The 1993 Franchise Agreement grants to McNeff "the right and franchise . . .to operate a Property Damage Appraisers appraisal business." *Id.*, p. 1, ¶ 1A. The 1993 Franchise Agreement requires McNeff to prominently post a sign in his office: This facility is operated as a franchise of Property Damage Appraisers, Inc., by <u>Harold H. McNeff, III</u> ("Franchisee"). **Franchisee is not an employer or agent of Property Damage Appraisers, Inc.**" *Id.*, p. 12, ¶ 9b (emphasis added).

Elsewhere in the 1993 Franchise Agreement, the relationship between PDA and McNeff is clarified:

> 16. **INDEPENDENT CONTRACTOR AND INDEMNIFICATION**
>
>    a. It is understood and agreed by the parties hereto that . . . Franchisee shall be an independent contractor, and that nothing in this Agreement is intended to constitute either party as an agent, . . .employee, or servant of the other for any purpose whatsoever. No employee of the Franchisee shall be deemed to be an employee of PDA for any purpose whatsoever. PDA shall not have the power to hire or fire Franchisee's employees and, except as herein expressly provided, *PDA may not control or have access to Franchisee's funds or the expenditure thereof, or in any way exercise dominion or control over Franchisee's business.*

*Id.*, p. 25 (emphasis added).

PDA is obligated to provide three days of initial training and assistance for the opening of the business. *Id.*, p. 3, ¶ A. It is obligated to provide a "Confidential Operations Manual." At McNeff's expense, PDA provides forms for use in the business. *Id.*, ¶ C. It provides advertising, promotional, marketing, managing, and operating materials to McNeff.

McNeff is required to pay PDA a royalty of 15% of his weekly gross invoice fees. *Id.*, p. 4, ¶ A.

McNeff performs the obligations of an Operating Principal under the Agreement. *Id.*, p. 6, ¶ A. McNeff is required to obtain and assume the cost of a site for the business. *Id.*, p. 1, ¶ C. He hires, compensates, and trains his own employees, but he is required to employ competent employees. *Id.*, p. 8, ¶ D.

He is required under the Franchise Agreement to obtain comprehensive general and automobile liability insurance. He is also required to obtain employer's liability and workmen compensation insurance for each of his employees. *Id.*, pp. 9,10, ¶ H.

As noted earlier, McNeff's long term disability insurance coverage was provided by Guardian under a group policy, whose premiums were paid by PDA.

4

In September 1993, McNeff was injured in an automobile accident. Guardian duly processed the claim, and paid monthly benefits to McNeff for the period March 1994 - April 1996. Its cessation of benefits resulted in the filing of this action.

II

The issue presented is whether McNeff is a participant or beneficiary of an employee welfare benefit plan. If he falls into that category, then his state law claims are preempted by ERISA. If he falls outside the category, then he may proceed on these claims.

III

ERISA defines an "employee welfare benefit plan" as

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer . . .to the extent that such . . .was established or maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, death or unemployment. . .

29 U.S.C. § 1002(1).

The statute defines the word "employee" as "any individual employed by an employer." 29 U.S.C. § 1002(6). It defines the word "participant" as "any employee or former employee of an employer .

5

. .who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employers..." 29 U.S.C. § 1002(7). The Supreme court noted the circularity of the statutory definition in *Nationwide Mutual Insurance Company v. Darden*, 503 U.S. 318, 323; 112 S. Ct. 1344 (1992).

In *Nationwide*, the Supreme Court "adopt[ed] a common-law test for determining who qualifies as an `employee' under ERISA . . ." *Id.*, U.S. at 322; S. Ct. At 1348. Under the applicable general common law of agency, embodied in Restatement (Second) of Agency § 220, the court should focus attention on whether McNeff is subject to PDA's control in his performance of services for PDA. *Id.*, U.S. at 322; S. Ct. At 1348. Put another way, the relevant inquiry is whether McNeff is an independent contractor rather than an employee or "servant," in the antiquated terminology of the Restatement (Second) Agency.

In deciding whether McNeff is an employee, the following non-exhaustive factors should be considered:

> (a) the extent of control which, by the agreement, [PDA] may exercise control over the details of the work, including when and how long to work;
>
> (b) the location of the work;

6

>   (c) whether the work is usually done by McNeff without the supervision of PDA;
>
>   (d) the skill required to appraise automobile damage;
>
>   (e) the source of the materials, tools, and equipment for performing the job;
>
>   (f) the duration of the relationship between McNeff and PDA;
>
>   (g) the method of payment, whether by time or by the job;
>
>   (h) McNeff's role in hiring, paying, and providing employment benefits to his assistants;
>
>   (i) whether or not the parties believe they are creating the relationship of [employer and employee]; and
>
>   (j) whether McNeff is or is not in business.

Restatement (Second) Agency, § 220; *Nationwide*, U.S. at 322, S. Ct. at 1348. All of the incidents of the relationship between McNeff and PDA must be assessed and weighed, with no one factor being controlling.

On consideration of the relevant factors, the court finds that McNeff is not an employee of PDA.

McNeff controls the day-to-day, operational details of the work. He is the "operating principal" in the relationship. The work is performed at a business location of his selection and at his expense in Birmingham, Alabama, rather than at PDA's offices.

In his appraisals of damaged vehicles, PDA does not supervise McNeff and his employees. Considerable skill and judgment are involved in the appraisal business.

McNeff is responsible for providing his own materials, supplies, and equipment, though some of these may or must be purchased from PDA. He is not paid an hourly wage, salary or commission. He generates his own income, and from that income, he pays a royalty to PDA.

McNeff hires, trains, pays, and provides insurance and other employment benefits for his own employees.

It is the clear intent, understanding, and express agreement of the parties that McNeff is an independent contractor, rather than an employee or agent of PDA.

Since McNeff is not an employee of PDA, he cannot be a participant in its employee welfare benefit plan.

IV

Unfortunately for McNeff, the determination that he is not a participant of the PDA employee benefit plan does not end the inquiry. For if he is a beneficiary of that plan, his state law claims are preempted.

ERISA defines "beneficiary" as "**a person** designated by a participant, or **by the terms of an employee benefit plan, who is**

8

or may become **entitled to a benefit thereunder**." 29 U.S.C. § 1001(8)(emphasis added). *See Peterson v. American Life and Health Ins. Co.*, 48 F.3d 404 (9th Cir. 1995); *Prudential Ins. Co. Of America v. Doe*, 76 F.3d 206 (8th Cir. 1996).

One is a "beneficiary" for ERISA purposes if he has a reasonable claim for benefits under an employee benefit plan. *Crawford v. Roane*, 53 F.3d 750 (6th cir. 1995). McNeff indubitably has such a claim. Not only is he entitled to benefits under the guardian policy, <u>he has actually received two years of such benefits</u>. McNeff's status fit as comfortably within the plain words of the statute as hand in glove.

In determining his status as a beneficiary, it is of no moment that McNeff is not an employee of PDA. *See Harper v. Chambers Life Ins. Co.*, 898 F.2d 1432 (9th Cir. 1990).

It is equally insignificant that McNeff is himself an employer, for he is not the employer involved in the employee benefit plan under which he seeks benefits.

By separate order, McNeff's Motion to Reconsider will be denied.

DONE this \_\_\_\_\_19th\_\_ day of June, 1998.

_____
UNITED STATES DISTRICT JUDGE
U. W. CLEMON

10